*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

FILED

JAN 2 2 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>BRASIL BROTHERS DAIRY,<br><br>              Debtor.<br>_____<br><br>GARY FARRAR, Chapter 7 Trustee,<br><br>              Plaintiff,<br><br>v.<br><br>NATIONAL MILK PRODUCERS<br>FEDERATION, et al.,<br><br>              Defendants.<br>_____ | Case No. 09-90326-D-7<br><br><br><br><br><br><br><br>Adv. Pro. No. 09-9076-D<br><br>Docket Control No. BMJ-1<br><br><br><br><br><br>DATE:  January 13, 2010<br>TIME:  10:30 a.m.<br>DEPT:  D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM DECISION

On November 20, 2009, defendant National Milk Producers Federation, dba CWT-Cooperatives Working Together ("CWT"), filed a notice of motion and memorandum of law in support of motion to dismiss, bearing Docket Control No. BMJ-1 (the "Motion"),[1] in which CWT seeks dismissal of the plaintiff's only claims for relief against CWT, the third, fourth, and fifth claims for relief in the complaint -- for turnover, damages for violation of the automatic stay, and avoidance of a post-petition transfer,

---

    1.  CWT having filed no separate document entitled motion to dismiss, these two documents will be treated as the motion.

respectively. For the reasons set forth below, the court will grant the Motion in part.

## I. INTRODUCTION

Brasil Brothers Dairy (the "debtor") commenced this bankruptcy case on February 9, 2009 by the filing of a voluntary chapter 7 petition.[2] According to the chapter 7 trustee and plaintiff herein, Gary Farrar (the "trustee"), on February 18, 2009, CWT issued a check for $323,745 payable to defendant Maria Enes ("Enes"), which it delivered to Enes through her attorney, Frank Lima ("Lima"). The trustee alleges that the check represented a portion of the proceeds due the debtor for cattle it had sold on January 1 and 2, 2009 pursuant to the CWT Dairy Herd Retirement Program (the "CWT program").[3]

The trustee contends that the $323,745 was property of the bankruptcy estate at the time it was paid to Enes, and thus, he seeks turnover of those funds from CWT as a payment in violation of the automatic stay of 11 U.S.C. § 362(a). He also seeks damages, including fees and costs, for this stay violation, and avoidance of the payment as an unauthorized post-petition transfer.

CWT seeks dismissal on the grounds that (1) turnover is not available as to property the defendant no longer possesses or controls unless the defendant was a fiduciary of the debtor, and

---

2. Unless otherwise indicated, all Code, chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

3. Under the CWT program, the CWT pays a certain sum of money to a participating dairy in exchange for the dairy selling its herd for slaughter.

in this case, there was no such fiduciary relationship, (2) CWT did not violate the stay because it did not know of the existence of the bankruptcy case or the stay at the time of the payment, (3) as a transfer initiated by the debtor, the payment to Enes was not covered by the stay, and (4) all three claims for relief should be dismissed because the funds were the subject of a pre-petition absolute assignment by the debtor, and thus, were not property of the estate at the time of the chapter 7 filing or at the time of the payment to Enes. The Motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), incorporated in this proceeding by Fed. R. Bankr. P. 7012(b), for failure to state a claim upon which relief can be granted.

## II.  ANALYSIS

This court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O).

A.  <u>Standards for Dismissal under Rule 12(b)(6)</u>

The United States Supreme Court has recently adopted a "plausibility" standard for assessing Rule 12(b)(6) motions, analyzing the complaint before it in terms of whether it contained enough factual allegations, taken as true, to plausibly suggest that the plaintiff was entitled to relief. <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 945 (2007). "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

The Court did not disturb its earlier pronouncement in <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 94 S. Ct. 1683 (1974), that on a

motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." 416 U.S. at 236. Thus, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" Bell Atl. Corp., 127 S. Ct. at 1965, quoting and characterizing Scheuer v. Rhodes, 416 U.S. at 236.

B.  The Alleged Absolute Assignment

The crux of the matter is a document entitled "Authorization and Instruction," dated January 7, 2009 and signed by Antonio Brasil and Pedro Brasil, individually and dba Brasil Bros. Dairy. Pursuant to that document, the Brasil brothers purported to "authorize and instruct [CWT] to deliver a check made payable to Maria Enes in the amount of $323,745.20 and deliver said payment to the Law Office of Frank M. Lima [address], from the amount otherwise payable to us by CWT."[4] CWT contends that this document constituted an absolute assignment to Enes of the right to the funds, and thus, that the right to the funds was no longer property of the debtor after the assignment was made and was not property of the estate on the petition date or at the time of the payment.

> While no particular form of assignment is necessary, the assignment, to be effectual, must be a manifestation to another person by the owner of the right indicating his intention to transfer, without further action or manifestation of intention, the right to such other person, or to a third person (citations).

Cockerell v. Title Ins. & Trust Co., 42 Cal. 2d 284, 291 (1954).

---

4. Reply to Plaintiff's Opposition to Defendant National Milk Producers Federation, dba Cooperatives Working Together's Motion to Dismiss, filed December 16, 2009, Ex. A.

The burden of proving an assignment is on the party asserting it, and the evidence must be sufficiently "clear and positive" to protect the obligor from any further claim by the assignor. Id. at 292.

> If from the entire transaction and the conduct of the parties it clearly appears that the intent of the parties was to pass title to the chose in action, then an assignment will be held to have taken place. (Citations.) From the foregoing it will be evident that "intent" is of major significance.

McCown v. Spencer, 8 Cal. App. 3d 216, 226-27 (1970).

In the present case, assuming arguendo the authenticity of the Authorization and Instruction, the language of that document is far from sufficient to establish that the parties intended an assignment of the debtor's rights as regards its CWT participation and the proceeds due from CWT. See E.B.C. Trust Corp. v. JB Oxford Holdings, Inc., 2005 U.S. Dist. LEXIS 46806, at *13-14 (C.D. Cal. 2005) ("Genuine issues of fact exist which preclude the court from determining whether the notes were assigned to Plaintiff EBC, including whether Oeri executed the assignment and intended to transfer the notes to EBC as well as when and how Plaintiff obtained both the notes.").

In a case similar to this one, the debtor had, pre-petition, signed a document with this language: "I hereby authorize and direct you, my attorney, to pay directly to the Coolidge Physical Therapy Center, such sums as may be due and owing for services rendered me by reason of this accident . . . ." When the bankruptcy trustee later settled the lawsuit, the therapy center asserted a right to the proceeds by way of assignment. The court concluded that the above language "does not manifest an intent to

transfer the bankrupt's right of action to any other person and did not result in an assignment." In re Colby, 1980 Bankr. LEXIS 4689, *5-6 (Bankr. C.D. Cal. 1980). See also Ocean Marine Ins. Co. v. Wickland Corp., 1995 U.S. Dist. LEXIS 3085, at *26 (N.D. Cal. 1995) ("[A]n order to pay proceeds is not sufficient to effect an assignment of all rights under the contract.").

Finally, even an absolute assignment does not preclude the possibility that the assignor retains a right to some or all the proceeds. See Cohn v. Thompson, 128 Cal. App. Supp. 783, 788 (1932) ("Provided the assignment is absolute, so as to vest the apparent legal title in the assignee, the latter is entitled to sue in his own name, whatever collateral arrangements have been made between him and the assignor respecting the proceeds.")

In short, the trustee's allegations, if proven, would support the conclusion that the debtor merely directed CWT to pay to Enes a particular portion of the amount otherwise payable to the debtor, and not that the debtor made an assignment of all its rights to Enes, such as would defeat the trustee's claims.

C. Lack of Present Possession or Control

CWT contends the trustee cannot compel it to turn over the $323,745 in proceeds because it no longer has possession or control of the funds, having paid them to Enes. However, it is necessary only that the defendant in a turnover action have had possession, custody, or control of the property in question at some time during the case. Section 542(a); Cassel v. Globerson (In re Kolb), 2007 Bankr. LEXIS 1896, at *12-13 (Bankr. N.D. Cal. 2007). The trustee alleges that CWT issued the check on February 18, 2009, nine days after the case was commenced. The cause of

action is not defeated simply because CWT no longer has the funds.[5] Any seeming unfairness in this result is countered by the availability of a § 542(c) defense.

D. <u>Knowledge of the Bankruptcy Case and/or the Stay</u>

CWT contends the complaint does not state a claim for damages for violation of the automatic stay because it does not sufficiently allege that CWT knew of the bankruptcy case or the stay at the time it issued the check to Enes.

The court agrees. There is but a single allegation in the complaint pertaining in any way to this issue; namely, a reference to this single line in a February 11, 2009 fax from the debtor's counsel to CWT: "Re: Brasil Brothers Dairy Chapter 7 case No. 09-90326." If the claim for relief is to survive, the court must infer, based on that single allegation, that CWT had knowledge of the automatic stay at the time of the payment. The allegation is not sufficient to support the inference.

It is also significant that the trustee omitted the word "willfully" when referring to CWT's alleged violation in his fourth claim for relief, but included it when describing Enes' and Lima's alleged violations.

Moreover, the complaint is vague as to the statutory underpinning of this claim for relief, referring only to § 362, presumably § 362(k)(1). However, the trustee cannot recover damages under that section because he is not an "individual" for purposes of the statute. <u>Havelock v. Taxel (In re Pace)</u>, 67 F.3d 187, 193 (9th Cir. 1995). Although § 105(a) provides a remedy if

---

5. Thus, the court need not reach the issue of whether a fiduciary relationship existed between the debtor and CWT.

the trustee can demonstrate that CWT's payment to Enes rose to the level of civil contempt (id.), the complaint in this case does not mention either § 105(a) or contempt, and it does not allege facts sufficient to support the necessary finding of willfulness. See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1189 (9th Cir. 2003).

Whereas for purposes of § 362(k)(1), a person with knowledge of the bankruptcy case itself is charged with knowledge of the automatic stay (In re Pinkstaff, 974 F.2d 113, 115 (9th Cir. 1992)), the same is not true in contempt proceedings. Knupfer at 1191-92. For a finding of contempt, a plaintiff must establish that the defendant knew of the existence of the stay itself. Id. Here, the factual allegations, taken as true, are not sufficient to plausibly suggest that CWT was aware of the bankruptcy case or the automatic stay at the time of the payment to Enes. Thus, the fourth claim for relief, as against CWT, will be dismissed with leave to amend.

The trustee's third claim for relief, for turnover by CWT, appears to depend on an allegation that the payment was made in violation of the stay. However, it is not necessary for a cause of action for turnover that there have been a violation of the automatic stay, only that an entity other than a custodian have been in possession, custody, or control of property of the estate during the case. § 542(a). Although it is alleged in the trustee's second claim for relief, for turnover by Enes, that the cash value of the payment is property of the estate, the third claim for relief does not clearly allege that the funds, at the time CWT paid them to Enes, were property of the estate. Thus,

the third claim for relief will also be dismissed with leave to amend.

E. Transfer Initiated by the Debtor

CWT contends that the transfer of the funds to Enes did not violate the stay because the debtor initiated the transfer. It is the law in the Ninth Circuit that "[the] automatic stay does not apply to sales or transfers of property initiated by the debtor." Burkart v. Coleman (In re Tippett), 542 F.3d 684, 691 (9th Cir. 2008), quoting Schwartz v. United States (In re Schwartz), 954 F.2d 569, 574 (9th Cir. 1992).

However, the issue of who initiated the transfer is a question of fact that cannot be decided on the pleadings. Further, the allegations of the complaint, if proven, would support the conclusion that the transfer was initiated by Enes and/or her attorney, rather than by the debtor.[6]

### III. CONCLUSION

For the reasons set forth above, the Motion will be denied as to the trustee's fifth claim for relief (avoidance of post-petition transfer) and granted as to the third and fourth claims for relief (turnover and violation of the stay), which will be dismissed with leave to amend. Amendments to pleadings are to be liberally allowed in view of the policy favoring determination of disputes on their merits. See Fed. R. Bankr. P. 7015, incorporating Fed. R. Civ. P. 15(a)(2); Magno v. Rigsby (In re

---

6. It appears, although the court need not decide at this time, that the only action taken by or on behalf of the debtor toward the initiation of the transfer was the signing of the Authorization and Instruction, which occurred pre-petition, and thus, before the automatic stay came into play.

- 9 -

Magno), 216 B.R. 34, 38 (9th Cir. BAP 1997), citing <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1482 (9th Cir. 1997), <u>United States v. Webb</u>, 655 F.2d 977, 979 (9th Cir. 1981). The court finds neither undue prejudice to CWT, bad faith on the part of the trustee, futility of any possible amendment, nor undue delay, such as might warrant dismissal without leave to amend. See <u>Bowles v. Reade</u>, 198 F.3d 752, 757-58 (9th Cir. 1999).

The court will issue an appropriate order.

Dated: January 22, 2010

*/s/ Robert Bardwil*
ROBERT S. BARDWIL
United States Bankruptcy Judge

## CERTIFICATE OF MAILING

     I, Andrea Lovgren, in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document on today's date to each of the parties listed below:

Clifford Stevens
P.O. Box 20
Stockton, CA 95201-2030

Christopher Bell
Baker Manock & Jensen
5260 N Palm Ave., 4th Floor
Fresno, CA 93704

Maria Enes
c/o Frank Lima
1135 South Center Street
P.O. Box 1825
Turlock, CA 95381-1825

Scott Allen Sanders
c/o David Kahn
Kahn, Soares & Conway
219 N. Douty Street
Hanford, CA 93230

Jacob Eaton
4550 California Avenue, 2nd Floor
Bakersfield, CA 93309


DATE:   JAN 2 2 2010

                                                                   Deputy Clerk